Argued April 13, affirmed April 27, 1955

# AMERICAN SURETY COMPANY *v.* C. & S. HOMES, INC. ET AL.

282 P. 2d 671

*Arthur E. Prag,* of Portland, argued the cause and filed a brief for appellants.

*E. F. Bernard* argued the cause for respondent. ■

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

PER CURIAM.

This is an appeal by the defendants (except defendant Edward H. Weil) from a judgment entered against all defendants except Weil in favor of plaintiff American Surety Company of New York, a corporation, for the sum of $46,646.83, with interest at the rate of 6 per cent per annum from April 27, 1951, until paid.

Plaintiff is a New York corporation and is engaged, among other things, in the business of furnishing surety bonds and executing bonds as surety, and is authorized to transact business in the states of Oregon and Washington. Defendant C. & S. Homes, Inc., is an Oregon corporation, with its principal place of business located in Portland, Multnomah county, Oregon. State College of Washington is a Washington corporation.

On or about September 15, 1948, defendant C. & S. Homes, Inc., and the Board of Regents of State College of Washington entered into an agreement whereby defendant C. & S. Homes, Inc., agreed to furnish all materials and perform all the work shown on drawings and described in specifications entitled "Thirty-four Unit Addition to South Fairway Housing Project" and to furnish a bond covering the faithful performance of the contract and the payment of all obligations thereunder in such form and with such surety as the Board of Regents of State College of Washington should prescribe and approve.

■ Prior to October 19, 1948, the defendant C. & S. Homes, Inc., applied to plaintiff to furnish a surety

bond for the performance by it of the above contract with State College of Washington. The request was made to plaintiff's local manager in Portland, Oregon. The required bond was in the sum of $161,147.62. At the time defendant C. & S. Homes, Inc., possessed assets as follows: cash in banks, $16,500; equipment, $2,500; advance royalties, $5,000, or a total of $24,000. It had no liabilities other than its capital stock in the sum of $24,000.

Plaintiff refused to issue the bond unless it was indemnified against loss by the individual stockholders of C. & S. Homes, Inc. Financial statements were thereupon requested of and furnished by the stockholders of defendant C. & S. Homes, Inc. The individual defendants named in this proceeding are stockholders of defendant corporation.

Under date of October 19, 1948, formal application in writing and upon printed form furnished by plaintiff was made by defendant corporation for issuance of the bond. This application was duly executed and acknowledged by defendant Edward J. Schaffer, as president, for and on behalf of the corporation. In the parts thereof material to this case, the application reads as follows:

"Should the American Surety Company of New York, hereinafter called the Surety, execute or procure the execution of the suretyship hereinbefore applied for or other suretyship in lieu thereof, or in connection therewith, the undersigned, hereinafter called the Indemnitor, does (if there be more than one Indemnitor they jointly and severally and for each other do) in consideration thereof hereby undertake and agree:

"* * * * *

"III. That the Indemnitor will perform all the conditions of the bid and/or contract bond herein, and any and all alterations, modifications, renewals

and extensions thereof, and will at all times indemnify and save the Surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees of special counsel whenever by the surety deemed necessary) expense, suit, order, judgment and adjudication whatsoever, and will place the Surety in funds to meet the same before it shall be required to make payment and in case the Indemnitor requests the Surety to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Surety, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein.

"* * * * *

"VI. That this agreement shall cover the suretyship above recited and all alterations, renewals, extensions and modifications thereof which may be requested or assented to by the Indemnitor or by the Principal named in the bond or obligation. The Surety is hereby authorized to assent to any changes in or modifications of the contract, plans, specifications, bond and suretyship without notice to or the request of the Indemnitor. That the Surety shall have the right to pay or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefor to the Surety.

"VII. That the release by the Surety of any indemnity or security by it held, or the acceptance by the Surety of other or additional security, indemnity or consideration, shall not be a waiver of any right or remedy of the Surety: nor shall it release the Indemnitor from any obligation hereunder.

"* * * * *

"IX. All the terms and conditions of this agreement shall stand for the protection of any co-surety, any reinsuring company or any other surety procured by the American Surety Company of New York above named, whether the American Surety

Company of New York does or does not execute or retain any portion of any such obligation.

"X. That in case of the failure of any Indemnitor to execute this obligation, or if the execution hereof by any one or more Indemnitors shall be invalid or defective, the remaining Indemnitors shall be and remain as fully liable as if such defect or invalidity had not existed.

"XI. Pronouns appearing in this agreement, whether singular or plural, are to be construed as referring to the Indemnitor, though the Indemnitor be one or more individuals, partnerships, associations or corporations.

"Signed and sealed this 19th day of October, 1948

~~Signed, sealed and delivered in the presence of:~~

Applicant sign here:
C & S Homes, Inc.,

BY: [Sgd.] Edw. J. Schaffer
President.
[Corporate seal]

"[Sgd.] C. W. Cooper
Individually

[Sgd.] Edw. J. Schaffer
Individually

[Sgd.] A. E. Prag
Individually

[Sgd.] G. McConkie
Individually."

The acknowledgment of Edward J. Schaffer, as president of defendant C. & S. Homes, Inc., and for and on behalf of the corporation, was taken on October 19, 1948, before Arthur E. Prag, Notary Public for Oregon. Also attached to the application is the following acknowledgment by the individuals:

"STATE OF OREGON    )
County of Multnomah    ) ss.        [Notary seal]

"On this 19th day of October, 1948, before me personally appeared EDWARD J. SCHAFFER, C. W. COOPER, ARTHUR E. PRAG, EDWARD H. WEIL and G. E. McCONKIE, to me known and known to me to be the persons described in and who executed the foregoing instrument; and they severally duly acknowledged to me that they executed the foregoing instrument.

"[Sgd.] Harry G. Hoy
Notary Public for Oregon
My Commission Expires: 6/18/1949."

Plaintiff issued its surety bond pursuant to the application. The defendant corporation defaulted on its contract with the Board of Regents of State College of Washington, and plaintiff was required to pay on account thereof the full sum of $44,069.69. The additional sum of $2,577.14 stated in the judgment represents accumulated interest on payments made by plaintiff up to April 27, 1951.

Plaintiff brought this action against defendants, as indemnitors, to recover upon the indemnity agreement. Defendants Cooper, Prag, McConkie, and Schaffer as an affirmative defense pleaded that they signed the application solely as witnesses to the corporation's signature and did not sign it as principals or indemnitors. By way of cross complaint, said individual defendants alleged that at the time they signed the instrument the words "Signed, sealed and delivered in the presence of:" had not been x-ed out, and that if they were x-ed out before they signed, it was done without their knowledge or consent, and that they signed said instrument as witnesses and not as principals or indemnitors. They prayed a decree reforming the instrument and restoring the words "Signed, sealed and delivered in the presence of:".

By stipulation of the parties in open court, a jury trial was waived, and the case was tried to the court

as a suit in equity. However, the trial court made and entered of record written findings of fact and conclusions of law, upon which its judgment is based.

Defendants in their brief set forth the issues on this appeal as follows:

"The plaintiff contends that the individual defendants signed the application for bond as indemnitors. The individual defendants contend that they did not sign the application for bond as indemnitors but merely as witnesses, as they signed under the words, 'Signed, Sealed and Delivered in Presence of.'

"The words 'Signed, Sealed and Delivered in Presence of' had been X-ed out of plaintiff's Exhibit 6 at the time the complaint was filed, as shown by the photostatic copy attached to the complaint.

"The main issue between the parties is whether or not the words 'Signed, Sealed and Delivered in Presence of' had been X-ed out at the time the individuals signed their names to the application."

It will be seen that only questions of fact are involved.

■ Defendants' case rests upon the claim that the evidence disclosed that the words "Signed, sealed and delivered in the presence of:" had been stricken out after they had signed the instrument, and not before, and that, therefore, it is clear that they signed only as witnesses and not as indemnitors. The greater portion of the record of testimony (The transcript contains 381 typewritten pages.) is devoted to that proposition. An expert witness was called by plaintiff and testified that the x-ing had been done by the same typewriter used in filling out the other parts of the application, and at the same time the other writing was done. Defendants maintain in this court that the testimony of the expert witness is unworthy of belief in the light of positive testimony to the contrary on behalf of de-

fendants. However, the trial judge was very much impressed by the expert's testimony, as evidenced by his written memorandum filed in this proceeding, and he found the issue against defendants' contentions. On appeals in equity suits where we try the cases de novo, we have always attached considerable weight to the findings of the trial judge upon disputed issues of fact.

However that may be, we are of the opinion that it is wholly immaterial whether the x-ing was done before or after the individual defendants signed the document, or whether it was done at all. The result would have been the same.

■ Even had those words remained in the instrument immediately above the signatures of the individual defendants, their presence could have had no other effect than to create an ambiguity, requiring the court to resort to established rules of construction in ascertaining the intent of the parties. The instrument must be considered as a whole and in the light of all the circumstances attending its execution. It is clear from the record that plaintiff would have issued no surety bond had not the individual stockholders of defendant corporation agreed to indemnify it against loss. The execution of the document by defendant corporation did not require witnesses. Its corporate seal, together with the signature and written acknowledgment of its president, were all that would be needed in any circumstances. It, too, is absurd to think that the president of the corporation would sign as a witness to his own signature as an officer of the corporation. Furthermore, it would be a novel situation indeed for witnesses to make formal acknowledgment to their own signatures as witnesses, but the individual defendants made no such acknowledgment in this case. That "They severally acknowledged to me that they *executed* the foregoing instrument" is the attestation of the Notary.

Witnesses do not *execute* instruments; they witness their *execution* by others. Nor are witnesses required to furnish financial statements to qualify them to witness the signature of another. These statements are required to show financial responsibility; in this case, to show that the individual defendants could make good upon their agreement to indemnify plaintiff. The word "individually" below the signature of each defendant is of added significance.

The record supports the judgment in favor of plaintiff. There is no merit in this appeal.

The judgment is affirmed.